```
                    UNITED STATES DISTRICT COURT          FILED
                   NORTHERN DISTRICT OF ALABAMA
                       NORTHEASTERN DIVISION           00 DEC 20 PM 2:37

                                                       U.S. DISTRICT COURT
DEWANNA PATE,                      )                      N.D. OF ALABAMA
                                   )
     Plaintiff,                    )
                                   )
vs.                                )     Civil Action No. CV-99-S-2298-NE
                                   )
K.R. INDUSTRIAL SERVICE OF         )
ALABAMA; DENNIS BURKETT; and       )
MARK VOSS,                         )       ENTERED
                                   )
     Defendants.                   )       DEC 20 2000
```

## MEMORANDUM OPINION

This action is before the court on plaintiff's motion for entry of default against K.R. Industrial Service of Alabama, Inc. ("K.R. Industrial") (doc. no. 38), and, plaintiff's renewed application and motion for default judgment against K.R. Industrial (doc. no. 43). Upon consideration of the pleadings, motions, affidavits, and exhibits, the court enters the following findings of fact and conclusions of law.

### I. FINDINGS OF FACT

K.R. Industrial is an Alabama corporation. On the dates relevant to this action, the company's principal place of business was located in Morgan County, Alabama.[1] It provided cleaning services to various industrial facilities, such as Monsanto Chemical Company and Trico Steel.[2]

---

[1] Plaintiff's counsel has represented that K.R. Industrial now is "defunct." See, e.g., Plaintiff's motion for default against K.R. Industrial Service of Alabama (doc. no. 38) ¶ 12, at 4-5.

[2] See Exhibit C to plaintiff's renewed application and motion for default



K.R. Industrial was an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e(b), in that it was engaged in an industry affecting commerce and employed fifteen or more persons for each working day in each of twenty or more calendar weeks during the year preceding plaintiff's charge of discrimination.[3]

Plaintiff was employed by the company as a secretary in its Trinity, Alabama, office from June 16th through December 2nd, 1998, when she was fired.[4] During her brief, five and a half month tenure plaintiff was subjected to unwelcome sexual advances, sexual solicitations, and other offensive conduct by the individual defendants, Mark Voss and Dennis Burkett. Voss was shop foreman for the company's Trinity facility, and worked in the same office as plaintiff. Burkett was the company's Operations Manager, and the person to whom plaintiff directly reported. He also was the son-in-law of Kenneth & Carolyn McDonald, the principal stockholders of K.R. Industrial.[5] Plaintiff described the conduct about which she complains as follows:

1. On September 9, 1998, Voss said he wished plaintiff were a "trashy secretary," like others who had worked in the office before her, "because he would like to lock the doors to the

---

judgment (affidavit of plaintiff, Dewanna Pate) ¶ 5.

[3] *See* plaintiff's complaint (doc. no. 1) ¶ 6.

[4] *See* Exhibit C to plaintiff's renewed application and motion for default judgment (affidavit of plaintiff, Dewanna Pate) ¶¶ 4, 23.

[5] *Id.* ¶¶ 5-8.

2

      office and 'get busy' with [her]. He stated that if [plaintiff] would do this with him, [she] wouldn't be bored anymore."[6]

2. On September 15, 1998, Voss suggested that, if plaintiff ever wanted to work in a "whorehouse," he would like to "get [her] started" in that "kind of work," because "he thought [she] could make a lot of money."[7]

3. On November 23, 1998, Voss and Burkett discussed in plaintiff's presence the topic of masturbation, and, the short skirts and low-cut blouses worn by the secretary who preceded her. Voss suggested that, if plaintiff would dress in a similar fashion, she would get a raise.[8]

4. On November 24, 1998, Burkett asked plaintiff to retrieve ten copies of a bid package from a drawer in his desk. When plaintiff opened the drawer, she "saw five or six issues of Hustler and Playboy magazines" that Burkett "had obviously" placed there for her to find, because he "laughed" when she complained.[9]

5. On November 30, 1998, Burkett "came up behind [plaintiff] while [she] was sitting at [her] desk. He reached over [her] shoulder to open [her] desk drawer and touched [her] chest. [She] immediately objected and told him [she] wished he would not touch [her] in an inappropriate and offensive way. He then started rubbing [plaintiff's] shoulders and asked [her] what was wrong. [She] told him [she] objected to his touching [her]."[10]

6. Additionally, on three or four other occasions prior to November 30, 1998, Burkett "engaged in the same conduct. Namely, reaching over my shoulder and touching my chest and rubbing my shoulders. This conduct was unwanted, offensive, and sexual in nature."[11]

Plaintiff complained repeatedly about this conduct to the company's

---

[6] *Id.* ¶ 10.
[7] *Id.* ¶ 13.
[8] *Id.* ¶¶ 15 & 16.
[9] *Id.* ¶¶ 17 & 18.
[10] *Id.* ¶ 20.
[11] *Id.* ¶ 21.

Regional Vice President, Richard Brannon.[12] He did not render effective assistance. For example, on the day following the incident described in paragraph 4 above, Brannon told plaintiff that

> he would try to handle the situation but that I needed to understand that Mr. Burkett was the son-in-law of the company owners, the McDonalds, and if they had to choose between their son-in-law and me, they would choose him. Mr. Brannon also told me that if I made a complaint directly to the McDonalds, that I would be fired on the spot.[13]

The last occasion on which plaintiff complained to Brannon was December 1, 1998, when she "asked that he make sure that Mr. Burkett did not touch [her] again."[14] Brannon instead fired her the following day, saying that

> Carol McDonald had ordered him to terminate my employment. Mr. Brannon claimed that my position was being eliminated because K.R. had lost the Trico contract. However, when I came in on December 11, 1998 to pick up my last pay check, I met a new secretary who had been hired to take my position.[15]

Plaintiff consequently asserts that her "termination was a direct retaliation for [her] complaints about the improper conduct of Mr. Burkett and Mr. Voss."[16]

Plaintiff filed a charge of discrimination with the Equal

---

[12] *See id.* ¶¶ 7, 12, 14, 19, 22.
[13] *Id.* ¶ 19.
[14] *Id.* ¶ 22.
[15] *Id.* ¶ 23.
[16] *Id.* ¶ 24.

4

Employment Opportunity Commission on February 22, 1999.[17] The EEOC terminated its investigation on June 8, 1999, and issued plaintiff an early notice of her right to sue.[18] She initiated the present action on September 1, 1999, alleging that: K.R. Industrial subjected her to a sexually hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a);[19] she was terminated by K.R. Industrial in retaliation for her opposition to the sexual advances of Voss and Burkett, in violation of 42 U.S.C. § 2000e-3(a);[20] Burkett and Voss wrongfully invaded her privacy;[21] K.R. Industrial negligently or wantonly supervised Burkett and Voss;[22] and, Burkett committed an assault and battery.[23] K.R. Industrial was served with a copy of the summons and complaint on March 28, 2000.[24] The company thereafter failed to answer or otherwise respond to the complaint.

---

[17] Complaint ¶ 7.

[18] Complaint Exhibit B (copy of notice of right to sue stating "[l]ess than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.").

[19] Complaint, Count One, ¶ 26.

[20] *Id.*, Count Two, ¶ 28.

[21] *Id.*, Count Three, ¶ 32. Plaintiff also asserted in this count that K.R. Industrial was jointly liable with the individual defendants because, *inter alia*, it "ratified, tolerated, adopted, and authorized [the] wrongful conduct of Defendants Burkett and Voss." *Id.* ¶ 31.

[22] *Id.*, Count Four, ¶¶ 33-35.

[23] *Id.*, Count Five, ¶ 37.

[24] See Exhibit E to plaintiff's renewed application and motion for default judgment (doc. no. 43).

## II. CONCLUSIONS OF LAW

### A. Sexually Hostile Work Environment

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Sexual harassment is a form of sex discrimination prohibited by Title VII. *See Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986) (holding that "[t]he phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment").[25] The Eleventh Circuit has observed that "Title VII prohibits employment discrimination on the basis of gender, and seeks to remove arbitrary barriers to sexual equality at the workplace with respect

---

[25] The Supreme Court first addressed the issue of sexual harassment in *Meritor Savings Bank*, and held that "unwelcome sexual advances that create an offensive or hostile working environment violate Title VII. Without question, when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex." 477 U.S. at 64, 106 S.Ct. at 2404. The Court went on to say that Title VII is violated, and sexual harassment is actionable, whenever the workplace is permeated with "discriminatory intimidation, ridicule, and insult" (*id.* at 65, 106 S.Ct. at 2405) that is "sufficiently severe or pervasive 'to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* at 67, 106 S.Ct. at 2405 (quoting *Henson*, 682 F.2d at 904).

to 'compensation, terms, conditions, or privileges of employment.'"
*Henson v. City of Dundee*, 682 F.2d 897, 901 (11th Cir. 1982).

> Sexual harassment which creates a hostile or offensive environment for members of one sex is every bit the arbitrary barrier to sexual equality at the workplace that racial harassment is to racial equality. Surely, a requirement that a man or woman run a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living can be as demeaning and disconcerting as the harshest of racial epithets. A pattern of sexual harassment inflicted upon an employee because of her sex is a pattern of behavior that inflicts disparate treatment upon a member of one sex with respect to terms, conditions, or privileges of employment. There is no requirement that an employee subjected to such disparate treatment prove in addition that she has suffered tangible job detriment.

*Id.* at 902 (footnote omitted).

The Eleventh Circuit recently reiterated the elements that an employee must establish to support a prima facie Title VII hostile work environment claim in *Mendoza v. Borden, Inc.*, 195 F.3d 1238 (11th Cir. 1999) (*en banc*). The employee must demonstrate that: (1) she belongs to a protected group; (2) she was subjected to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (3) the harassment complained of must have been based upon the sex of the employee; (4) the harassment complained of was sufficiently severe <u>or</u> pervasive to alter the terms and conditions of employment, and created a discriminatorily intimidating, hostile, or abusive working environment; and (5) a basis for

7

holding the employer liable. *Id.* at 1245; *see also, e.g.*, *Gupta v. Florida Board of Regents*, 212 F.3d 571, 582 (11th Cir. 2000); *Cross v. State of Alabama*, 49 F.3d 1490, 1504 (11th Cir. 1995); *Bell v. Crackin Good Bakers, Inc.*, 777 F.2d 1497, 1502-03 (11th Cir. 1985); *Henson*, 682 F.2d at 903-05.

The plaintiff's affidavit establishes all elements of a prima facie case against defendant K.R. Industrial, including the fifth.[26]

## B. Retaliation Claim

"Retaliation is a separate violation of Title VII." *Gupta*, 212 F.3d at 586. Section 704(a) of Title VII of the Civil Rights Act of 1964, now codified at 42 U.S.C. § 2000e-3(a), provides protection to those employees who oppose or participate in activities to correct an employer's discriminatory practices:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any

---

[26] The Supreme Court's simultaneous decisions in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), clarified the standards for determining employer liability for harassment. *See generally* Barbara T. Lindemann & David D. Kadue, *Sexual Harassment in Employment Law* 11 (Supp. 1999) (*Ellerth* and *Faragher* "articulate a unified jurisprudence of employer liability for harassment."). Employer liability for sexual harassment now turns upon two questions. One, was the alleged harasser merely a co-employee, or a supervisor with immediate or successively higher authority over the victim? And, two, did a "tangible" adverse employment action occur? If the harasser was the plaintiff's supervisor, and, he or she subjected the plaintiff to a "tangible" adverse employment action, then the employer is vicariously liable. Here, the principal harasser, defendant Burkett, was plaintiff's immediate supervisor, and a tangible adverse employment action occurred.

>     manner in an investigation, proceeding, or hearing under
>     this subchapter.

42 U.S.C. § 2000e-3(a).  Congress thus recognized two bases for a claim of retaliation:  one for opposition to discriminatory practices, and another for participation in protected activity.

>     Under the opposition clause, an employer may not
>     retaliate against an employee because the employee "has
>     opposed any practice made an unlawful employment practice
>     by this subchapter." ... And, under the participation
>     clause, an employer may not retaliate against an employee
>     because the employee "has made a charge, testified,
>     assisted, or participated in any manner in an
>     investigation, proceeding, or hearing under this
>     subchapter." ...

*Equal Employment Opportunity Commission v. Total System Services, Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000).

A plaintiff must prove three elements to establish a *prima facie* case of retaliation under either the opposition or participation clause of § 2000e-3(a):  first, she engaged in activity protected by Title VII; second, she suffered an adverse employment action; and third, the existence of a causal connection between the protected activity and the adverse employment action. *See, e.g., Gupta*, 212 F.3d at 587; *Farley v. Nationwide Mutual Insurance Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999); *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1455 (11th Cir. 1998); *Meeks v. Computer Associates International*, 15 F.3d 1013, 1021 (11th Cir. 1994); *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir.

1993).

In addition, when (as in the present case) a retaliation claim is based upon conduct falling under the opposition clause of § 2000e-3(a), then a plaintiff also must demonstrate a good faith, reasonable basis for believing that the underlying, allegedly discriminatory practices constituted a violation of Title VII, as distinguished from proving that the employer actually engaged in an unlawful employment practice. *See, e.g., Wu v. Thomas*, 863 F.2d 1543, 1549 (11th Cir. 1989) ("[P]laintiff need only have had a 'reasonable belief' that an unlawful employment practice was occurring."). This additional element of a *prima facie* case for a retaliation claim under the opposition clause has two components, as the Eleventh Circuit observed in *Little v. United Technologies*, 103 F.3d 956 (11th Cir. 1997):

> We previously have recognized that a plaintiff can establish a *prima facie* case of retaliation under the opposition clause of Title VII if he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices. *See Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989). <u>It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component</u>. A plaintiff must not only show that he <u>subjectively</u> (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was <u>objectively reasonable</u> in light of the facts and records presented. It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively

10

reasonable.

> A plaintiff, therefore, need not prove the underlying discriminatory conduct that he opposed was actually unlawful in order to establish a *prima facie* case and overcome a motion for summary judgment; such a requirement "[w]ould not only chill the legitimate assertion of employee rights under Title VII but would tend to force employees to file formal charges rather than seek conciliation of informal adjustment of grievances." *Sias v. City Demonstration Agency*, 588 F.2d 692, 695 (9th Cir. 1978). *See also Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. Unit A Sept. 1981) ("To effectuate the policies of Title VII and to avoid the chilling effect that would otherwise arise, we are compelled to conclude that a plaintiff can establish a *prima facie* case of retaliatory discharge under the opposition clause of [Title VII] if he shows that he had a reasonable belief that the employer was engaged in unlawful employment practices."), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982).

*Id.* at 960 (emphasis in original) (footnote omitted); *see also, e.g.*, *Gupta*, 212 F.3d at 586 (entertaining plaintiff's retaliation claim, because "[a]lthough the conduct [plaintiff] complained about was not so severe and pervasive that it altered her working conditions, we cannot say that she lacked a 'reasonable good faith belief' that she was being sexually harassed"); *Harper v. Blockbuster Entertainment Corporation*, 139 F.3d 1385, 1388 (11th Cir. 1998); *Meeks*, 15 F.3d at 1021; *EEOC v. White & Sons Enterprises*, 881 F.2d 1006, 1012 n.5 (11th Cir. 1989); *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1494 (11th Cir. 1989); *Silver v. KCA, Inc.*, 586 F.2d 138 (9th Cir. 1978); I Barbara

Lindemann & Paul Grossman, *Employment Discrimination Law* 656-57 (3d ed. 1996) ("The rationale is that appropriate opposition should not be chilled by fear of retaliation—even if, as a matter of fact or law, there is no violation.") (footnote omitted).

Again, this court finds that plaintiff's affidavit establishes all elements of a prima facie case against defendant K.R. Industrial.

**C.   Effect of Plaintiff's Proof of Two Prima Facie Cases**

The establishment of a prima facie case "creates a presumption that the employer unlawfully discriminated against the employee," *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981), and shifts to the employer the burden of producing legitimate, non-discriminatory reasons for the contested employment action.  *Id.*; *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Walker v. Mortham*, 158 F.3d 1177, 1185 n.10 (11th Cir. 1998) (discussing reasons why presentation of a prima facie case creates "a <u>presumption</u>, and not an <u>inference</u>, of intentional discrimination") (emphasis in original).

However, when (as in this case) a defendant figuratively sits on its hands by (i) failing to answer or otherwise respond to the plaintiff's complaint, thereby allowing the entry of default, (ii) offering no "admissible evidence which would allow the trier of

12

fact rationally to conclude that the employment decision had not been motivated by discriminatory animus," *Burdine*, 450 U.S. at 257, 101 S.Ct. at 1096, then (iii) the presumption ripens into established fact and (iv) "the court <u>must</u> award judgment to the plaintiff <u>as a matter of law</u> ...." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 2748, 125 L.Ed.2d 407 (1993) (emphasis supplied).

> As then-Justice (now Chief Justice) Rehnquist pointed out long before the *Hicks* decision, we require a defendant, on pain of losing the case, to come forward with explanations for its actions once a plaintiff has made out a prima facie case of discrimination, "because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949-50, 57 L.Ed.2d 957 (1978).

*Combs v. Plantation Patterns*, 106 F.3d 1519, 1537 (11th Cir. 1997), cert. denied sub nom. *Combs v. Meadowcraft Co.*, 522 U.S. 685, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998).

**D.   Damages Recoverable**

A prevailing plaintiff may recover, among other remedial relief authorized by Title VII, back pay, compensatory and punitive damages, and attorney's fees. "In an action brought by a complaining party under [42 U.S.C. § 2000e-2 or § 2000e-3] against a respondent who engaged in unlawful intentional discrimination ... the complaining party may recover compensatory and punitive damages

as allowed by subsection (b) in addition to any relief authorized by ... [42 U.S.C.A. § 2000e-5(g)]." 42 U.S.C. § 1981a.

### 1. Back pay damages

The first category of damages that may be awarded a prevailing Title VII plaintiff is best described as "net loss of past wages or salary sustained by plaintiff as a result of the defendant's discriminatory conduct," but generally it is simply called "back pay." Basically, this category consists of the amount established by the evidence that a plaintiff would have received from defendant by way of wages or salary and other financial benefits from the date of her termination until the date of final judgment,[27] less any amount of compensation and other financial benefits earned or received by plaintiff during that period from any source whatever, which she would not have received if she had remained in the defendant's employ, and also less any amount, although not earned during that period, that plaintiff, through the exercise of reasonable diligence, could have earned by virtue of not being employed by defendant. In other words, a person has a duty to seek other employment, and to use her best efforts to mitigate or reduce her damages.[28] Here, however, plaintiff has not submitted any

---

[27] See, e.g., Kraszewski v. State Farm General Ins. Co., 912 F.2d 1182 (9th Cir. 1990), cert. denied, 111 S.Ct. 1414 (1991).

[28] Mitigation is an affirmative defense, however, and the burden of proving that an employee was not reasonably diligent in seeking comparable employment is cast upon the defendant-employer. See, e.g., Wheeler v. Snyder Buick, Inc., 794 F.2d 1228, 1234 (7th Cir. 1986).

14

evidence regarding (i) her wages while employed by K.R. Industrial, (ii) any wages she lost during the period between her termination and the date (if any) on which she obtained new employment, or (iii) *if* plaintiff obtained new employment, the amount of any wages earned in her new position. Accordingly, this court cannot award back pay damages.

### 2. Compensatory damages

The second category of damages that may be awarded a prevailing Title VII plaintiff is misleadingly described as "compensatory damages." "Compensatory" is a misnomer because, basically, this category consists of an award of money to compensate the plaintiff for such non-pecuniary losses as emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life which she suffered as a result of intentional discrimination by the defendant.[29]

Again, however, the plaintiff has not presented this court with specific descriptions of the impact of the events she relates upon her sense of mental wellbeing. Even so, that is not necessarily fatal to her claim for compensatory damages. No evidence of the *value* of such intangible things as mental pain, anguish, or suffering need be presented. There are two reasons for

---

[29] Compensatory damages may be awarded for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses...." 42 U.S.C. § 1981a(b)(3).

that. On the one hand, the law has no fixed monetary standard to compensate for such things. On the other hand, it is not "value" that a fact finder is required to determine, but an amount that will fairly compensate the plaintiff for the damages she obviously suffered, based upon the evidence presented.[30] Applying such standards, this court finds from plaintiff's description of the conduct of defendant's agents that she undoubtedly suffered a fair measure of emotional distress, mental anguish, inconvenience, loss of enjoyment of life, and other nonpecuniary losses, due to the discriminatory actions of which she complains. Accordingly, this court concludes that she is entitled to an award of compensatory damages in the amount of $5,000.

### 3. Punitive damages

Punitive damages may be awarded if "the respondent engaged in a discriminatory practice or practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). A plaintiff demonstrates malice or reckless indifference to a federally protected right by showing that the employer "discriminate[d] in the face of a perceived risk that its action will violate federal law." *Kolstad v. American Dental Association*, 527 U.S. 526, 536, 119 S.Ct. 2118,

---

[30] *See* Eleventh Circuit Pattern Jury Instructions – Civil Cases, *Damages Instruction* 2.1 (1990); *see also* 1 Alabama Pattern Jury Instructions – Civil § 11.05, at 226 (2d ed. 1993).

2125, 114 L.Ed.2d 494 (1999).[31]

This court is satisfied by the evidence presented that employees of defendant with important managerial authority personally acted with malice or with blatant disregard for civil obligations in connection with the discriminatory conduct, and personally approved the discriminatory acts of Voss and Burkett.[32] Plaintiff complained repeatedly to the defendant's Regional Vice President, but to no avail. Ultimately her employment was terminated by him, at the command of the mother-in-law of her chief harasser, in retaliation for such complaints. These facts demonstrate malice or reckless indifference to plaintiff's federally protected rights. Accordingly, this court concludes that plaintiff is entitled to an award of punitive damages in the amount of $15,000.

### 4. Attorneys' fees

42 U.S.C. § 2000e-5(k), as amended by the Civil Rights Act of 1991, provides that this court "may allow the prevailing party [in

---

[31] "The sum of the amount of compensatory damages awarded under this section ... and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party ... in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,0000." 42 U.S.C. § 1981a(b)(3)(A).

[32] See Kolstad v. American Dental Assoc., 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999); Splunge v. Shoney's, Inc., 97 F.3d 488, 491 (11th Cir. 1996). Kolstad suggests it need not be top management, officers or directors. Elements to consider are the type authority the employer has given to the employee, the amount of discretion that the employee has in what is done and how it is accomplished.

a Title VII case] ... a reasonable attorney's fee (including expert fees) as part of the costs...." Here, however, plaintiff submitted no evidence regarding (i) an accounting of the number of hours reasonably expended (and expenses incurred) by her attorneys in the prosecution of her complaint, together with (ii) statements of the hourly fees such attorneys propose to charge for the services rendered, or (iii) affidavits of attorneys who regularly practice employment discrimination law regarding the reasonableness of the charges proposed by plaintiff's attorneys of record. Accordingly, no award of attorneys' fees is authorized.

### E. Dismissal of State Law Claims

The only claims that have not been addressed are plaintiff's state law claims for invasion of privacy against defendants Burkett and Voss (Count Three), for negligent or wanton supervision against K. R. Industrial (Count Four), and for assault and battery against Burkett (Count Five). In cases such as this one, where the court's jurisdiction is based solely upon federal questions, the court has discretion to entertain state claims that are pendant (or supplemental) to the federal claims. *See* 28 U.S.C. § 1367(a). The court may decline to exercise supplemental jurisdiction when:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has

>     original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). As the Supreme Court has observed:

> a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendant state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.

*Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 349-50, 108 S.Ct. 614, 618, 98 L.Ed.2d 720 (1988) (citing *Mine Workers v. Gibbs*, 383 U.S. 715, 726-27, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon*, 484 U.S. at 350 n.7, 108 S.Ct. at 619 n.7; *see also L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984) (stating that "if the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even

requires dismissal of state claims").

Here, the court has disposed of all claims over which it has original jurisdiction. Moreover, even though this case was filed during 1999, it still is "early in the litigation," in the sense that very little (if any) discovery has been conducted with regard to the facts bearing upon plaintiff's state law claims. Thus, the balance of factors weigh in favor of declining supplemental jurisdiction, and this court exercises its discretion to dismiss plaintiff's state claims, but without prejudice to her right to pursue them in an appropriate state forum, if she chooses.

A judgment consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this **20th** day of December, 2000.

_____
United States District Judge